1

2

UNITED STATES DISTRICT COURT

3

SOUTHERN DISTRICT OF CALIFORNIA

4

5

6

7

8

9

10

| AARON DUMAS and EUGENE BUNER, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DIAGEO PLC and DIAGEO-GUINNESS USA INC. ,<br><br>Defendants. | Case No.:  15cv1681 BTM(BLM)<br><br>**ORDER GRANTING MOTION TO DISMISS** |
| --- | --- |

11

12

13

14

Defendant Diageo-Guinness USA, Inc., has filed a motion to dismiss the Complaint for failure to state a claim.[1]   For the reasons discussed below, Defendant's motion is **GRANTED**.

15

16

I. **BACKGROUND**

17

18

In this action, Plaintiffs Aaron Dumas and Eugene Buner allege that Defendants engaged in unfair and deceptive practices by misleading consumers

19

20

---

[1] On December 11, 2015, Plaintiffs filed a notice of voluntary dismissal of Defendant Diageo PLC.

1

1  into purchasing and overpaying for Red Stripe beer under the belief that the beer

2  was produced in Jamaica and imported.

3        The Complaint alleges that Red Stripe was first produced in Jamaica in 1938

4  and was brought to the United States in 1985.  (Compl. ¶ 10.)  In September 1993,

5  the predecessor to Defendant bought a controlling stake in D&G, the Jamaican

6  brewery with the rights to Red Stripe.  (Compl. ¶ 11.)  In 2012, Diageo moved

7  production of the U.S. supply of Red Stripe from Jamaica to the United States.

8  (Compl. ¶ 12.)  Red Stripe is now made in Latrobe, Pennsylvania by City Brewing

9  Company.  (Id.)

10        Plaintiff Aaron Dumas alleges that he bought Red Stripe six and twelve packs

11  as well as individual bottles from bars and restaurants.  (Compl. ¶ 4.)  Plaintiff

12  Eugene Buner alleges that he bought Red Stripe six and twelve packs.  (Compl. ¶

13  5.)

14        Plaintiffs allege that although Red Stripe is no longer imported from Jamaica,

15  the new packaging for Rest Stripe "was specifically designed in order to maintain

16  the brand identity of Red Stripe as Jamaican beer."  (Compl. ¶ 14.)  According to

17  Plaintiffs:

18          Nowhere on the cardboard packaging of Red Stripe does the label
        indicate that Red Stripe is brewed in the United States with domestic
19          ingredients.  In fact, the new packaging for Red Stripe boldly states
        that it is a "Jamaican Style Lager" that contains "The Taste of Jamaica,"
        and the packaging displays the distinctive D&G logo, despite the fact
20          that Red Stripe now originates from Latrobe, Pennsylvania – not

2

1    Jamaica.

2    (Compl. ¶ 14.)

3        Plaintiffs further allege that labeling on the bottles cannot even be seen

4    before twelve packs are purchased and cannot be seen in six-pack packaging

5    unless a bottle is removed and examined.   (Compl. ¶ 15.)   "Reasonable

6    consumers, including Plaintiffs, cannot or do not read the concealed fine print on

7    the bottles and cans until after they have already purchased Red Stripe."  (Id.)

8    Even then, the wording on the label is "ambiguous." (Id.)  The label on the bottles

9    states, "For over 80 years, Red Stripe has embodied the spirit, rhythm and pulse

10   of Jamaica and its people." (Id.)  "The only clue that Red Stripe is no longer a

11   Jamaican beer is that on the border of the new labels, in obscure white text, the

12   bottle says:  "Brewed & Bottled by Red Stripe Beer Company Latrobe, PA." (Id.)

13       Plaintiffs allege that Defendants' misrepresentations cause confusion among

14   consumers who believe they are purchasing Jamaican beer, imported from

15   Jamaica, brewed using Jamaican ingredients.  (Compl. ¶ 16.)   Consumers are

16   willing to pay a premium for high-quality imported beer. (Compl. ¶ 20.)  Plaintiffs

17   claim that as a result of Defendants' deceptive packaging and labeling, consumers

18   such as Plaintiffs are deceived and induced into purchasing and overpaying for

19   Red Stripe. (Comp. ¶ 21.)  Plaintiffs assert that if they had been made aware that

20   Red Stripe was not in fact an imported beer, they would not have purchased Red

3

Stripe, would have paid less for it, or would have purchased a different product. (Id.)

Consumers are also allegedly harmed because retailers, restaurants, and bars sell Red Stripe at higher prices under the false belief that it is still imported. (Compl. ¶ 18.)  The Complaint attaches copies of advertisements and websites erroneously stating that Red Stripe is "imported" in support of this claim.  (Ex. B to Compl.)

Plaintiffs allege that as a result of their unfair and deceptive practices, Defendants have collected millions of dollars from the sale of Red Stripe that they would not otherwise have earned.  (Compl. ¶ 23.)  Plaintiffs bring this suit on behalf of themselves and a purported class consisting of:

> All consumers who purchased Red Stripe at retail in the state of California for personal, family, and/or household purposes, and not for re-sale, during the period that Red Stripe was not imported from Jamaica, and within the four years prior to the Complaint filed in this action (the "Class Period").

(Compl. ¶ 24.)

The Complaint asserts the following claims: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal Bus. & Prof. Code § 17500 et. seq.; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ.

4

1  Code § 1750 et seq.; (4) negligent misrepresentation; and (5) intentional

2  misrepresentation.

3

4                              II. **STANDARD**

5      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should

6  be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or

7  sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police

8  Dept., 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the

9  allegations of material fact in plaintiff's complaint are taken as true and construed

10 in the light most favorable to the plaintiff.   See Parks Sch. of Bus., Inc. v.

11 Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).   Although detailed factual

12 allegations are not required, factual allegations "must be enough to raise a right to

13 relief above the speculative level."  Bell Atlantic v. Twombly, 550 U.S. 544, 555

14 (2007).  "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief'

15 requires more than labels and conclusions, and a formulaic recitation of the

16 elements of a cause of action will not do."  Id.  "[W]here the well-pleaded facts do

17 not permit the court to infer more than the mere possibility of misconduct, the

18 complaint has alleged - but it has not show[n] that the pleader is entitled to relief."

19 Ashcroft v. Iqbal, 565 U.S. 662, 679 (2009) (internal quotation marks omitted).

20

                                      5

1  Only a complaint that states a plausible claim for relief will survive a motion to

2  dismiss.  Id.

3

4                              **III.  DISCUSSION**

5        Defendant's primary argument in support of dismissing the Complaint is that

6  no reasonable consumer would be misled by the statements made on the Red

7  Stripe packaging and labeling.  The Court agrees that no reasonable consumer

8  would be misled into thinking that Red Stripe is made in Jamaica with Jamaican

9  ingredients based on the wording of the packaging and labeling.  Therefore, the

10  Court dismisses the Complaint on this ground and does not find it necessary to

11  reach Defendant's various other arguments.

12        Under the UCL, FAL, and CLRA, California consumer protection statutes,

13  the applicable standard for determining whether representations are deceptive is

14  the reasonable consumer standard.  Williams v. Gerber Prods. Co., 552 F.3d 934,

15  938 (9th Cir. 2008); Consumer Advocates v. Echostar Satellite Corp., 113 Cal.

16  App. 4th 1351, 1360 (2003).  The standard focuses on the perception of the

17  "normally credulous consumer" and asks whether the representation in question is

18  "likely to deceive" the consumer.  Lavie v. Procter & Gamble Co., 105 Cal. App.

19  4th 496, 508 (2003).  The California Court of Appeal explains:

20        "Likely to deceive" implies more than a mere possibility that the
          advertisement might conceivably be misunderstood by some few

                                     6

consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.

Id.

Generally, whether a business practice is deceptive is usually a question of fact which cannot be resolved on a demurrer or motion to dismiss.  Williams, 552 F.3d at 938.  However, there are "rare situations" where it is appropriate to grant a motion to dismiss based on review of the advertisement or product packaging itself.  Id. at 939.  See also Werbel v. Pepsico, Inc., 2010 WL 2673860, at * 3 (N.D. Cal. July 2, 2010) (explaining, "[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate.")

The bottle trays for the twelve packs and six-bottle packs of Red Stripe contain the language "Jamaican Style Lager" and "The Taste of Jamaica."  (RJN Ex. A.)[2] The packaging also includes the D&G logo.  The bottom of the packaging states, "Brewed and bottled by Red Stripe Beer Company Latrobe, PA."

---

[2] The Court grants Defendant's Request for Judicial Notice as to Exhibits A-D.  Although Plaintiffs do not object to the Court taking judicial notice of Exhibits A and D, they object to Exhibits B and C because they address products that are not at issue in this litigation.  However, the documents bear relevance to the issue of confusion as to the phrase "Jamaican Style."  The documents are public records filed with the U.S. Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB") and United States Patent and Trade Office ("US PTO") and are proper subjects of judicial notice under Fed. R. Evid. 201.  Courts may take judicial notice of public record without converting a motion to dismiss into a motion for summary

7

15cv1681 BTM(BLM)

1    Even if a consumer cannot be expected to see the language at the bottom

2  of the packaging, the Court finds that a reasonable customer would not be misled

3  by the visible packaging into believing that Red Stripe is brewed in Jamaica with

4  Jamaican ingredients.  The mere fact that the word "Jamaica" and "Jamaican"

5  appear on the packaging is not sufficient to support a conclusion that consumers

6  would be confused regarding the origin and ingredients of the beer.

7    In Forschner Group, Inc. v. Arrow Trading Co., Inc., 30 F.3d 348, 355 (2d

8  Cir. 1994), the Second Circuit held that the phrase "Swiss Army knife" cannot fairly

9  be read to mean "made in Switzerland."  The Second Circuit explained:

10       The fact that a composite phrase contains a geographic term does not
         necessarily mean that the phrase, viewed as a whole, is a geographic
11       designation.  The question is whether the phrase can be construed to
         mean that the product is made in a certain locale.
12
13  Id.  The court reasoned that as used in the phrase "Swiss Army knife," "Swiss" was

    read more naturally to modify "Army" rather than "knife."  Id. at 356.
14
15    The packaging for both the twelve packs and six packs prominently states

16  "Jamaican Style Lager" in bold letters.   On the twelve-pack bottle tray, this

17

18  _____

19  judgment as long as the facts noticed are not subject to reasonable dispute.  Skilstaf, Inc. v. CVS
    Caremark Corp., 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012).  Although Plaintiffs argue that the
    Court should not take judicial notice of Defendant's "assertion of what the contents mean,"
20  Plaintiffs do not dispute the fact that the Applications for Certificates of Label Approvals
    ("COLAs") in Exhibit B were filed with the TTB and the documents in Exhibit C are records of
    registered trademarks with the US PTO.

8

15cv1681 BTM(BLM)

1   language is directly to the left of the words "Red Stripe."   On the six-pack

2   packaging, the language is centered below the words "Red Stripe."

3   Clearly, "Jamaican" modifies the word "Style" not "Lager."  The very fact that

4   the word "style" is used indicates that the product is *not* from Jamaica.  "Type" is

5   used as a suffix to mean "of the specified type; typical or characteristic of . . .

6   *reminiscent or imitative of* . . . ." (Emphasis added.)[3]  When used with a geographic

7   term to describe food or drink, the word "type" means that the food or drink is

8   prepared in a fashion that is similar to or reminiscent of that used in the identified

9   geographic area.  For example, Blue Moon Brewing Company in Colorado brews

10  "Belgian-Style Wheat Ale," Masachusetts-based Harpoon Brewery produced a

11  "Belgian Style Pale Ale," and Cigar City Brewing produces "Cubano-Style

12  Espresso" brown ale in Florida.  (RJN Ex. B.)  Similarly, companies use "style"

13  designations such as "Turkish style," "Australian style," "Mumbai street style," and

14  "European style" in connection with food and beverage products.  (RJN Ex. C.)  A

15  reasonable consumer would not believe that Mexican-style rice is made in Mexico

16  or that Italian-style sauce is imported from Italy.

17  As for "The Taste of Jamaica," it seems that Plaintiffs take the phrase quite

18  literally and contend that the beer would have the taste of Jamaica if the ingredients

19  _____

20      [3] http://www.oed.com/view/Entry/208334?rskey=5lYhvK&result=4&isAdvanced
    =false#eid

15cv1681 BTM(BLM)

actually came from Jamaica.  However, "The Taste of Jamaica" is a vague and meaningless phrase – who can say what Jamaica "tastes" like?  When viewed together with the phrase "Jamaican Style Lager," a reasonable interpretation of the phrase is that the beer is made in a way that people identify with Jamaica (either a particular process and/or a certain recipe) and evokes the spirit or feeling of Jamaica.

Plaintiffs point to the continued inclusion of the D&G logo on the packaging as a source of confusion.  However, the logo itself does not impart information regarding the source of the product.[4]

In support of their position, Plaintiffs rely on <u>Marty v. Anheuser-Busch Companies, LLC</u>, 43 F. Supp. 3d 1333 (S.D. Fla. 2014).[5]  In <u>Marty</u>, consumers of Beck's beer alleged that they were deceived into thinking they were purchasing German beer, imported from Germany, and brewed using German requirements and with German ingredients.  The court found that representations that the beer "Originated in Germany," had "German Quality," and was "Brewed under the

_____

[4]   The Court doubts that the average consumer would know that the D&G logo is associated with Desnoes & Geddes Limited, the Jamaican brewery, as opposed to, say, Diageo-Guiness.  At any rate, continued use of the logo, which has been associated with Red Stripe, is not tantamount to a representation that Desnoes & Geddes brewed the beer.

[5]   Plaintiffs also rely on an order denying a motion to dismiss in <u>Suarez v. Anheuser-Busch Companies, LLC</u>, No. 13-033620, slip op. (Fla. Cir. Ct. Miami-Dade Cnty. Dec. 30, 2013).  (Pl. Ex. 5.)  However, the order is a summary opinion that does not set forth reasons for the decision and provides no guidance.

15cv1681 BTM(BLM)

1  German Purity Law of 1516," when viewed with allegations of the defendant's

2  overall marketing campaign and Beck's 139-year history of being brewed in

3  Germany, were sufficient to conclude that a reasonable consumer may be misled

4  to believe that Beck's is an imported beer brewed in Germany.  <u>Id.</u> at 1342.

5      <u>Marty</u>, however, is distinguishable.  The term "Originated in Germany" could

6  be understood to mean that the beer came from Germany.  Also, claims that the

7  beer was brewed under the Germany Purity Law of 1516 and that the beer is of

8  German quality makes it sound like the production of the beer was subject to

9  German law.  The facts of the present case are not comparable.

10     To the extent Plaintiffs complain that representations on the packaging of

11  Red Stripe are not sufficient to alert consumers *who already have an*

12  *understanding and expectation that Red Stripe is brewed in Jamaica* that

13  production of the beer has been moved to Pennsylvania, the Court is unaware of

14  any authority supporting the proposition that Defendant would have a heightened

15  duty to counter those pre-conceived notions.  Consumers who used to buy Red

16  Stripe when it was made in Jamaica might very well continue to buy the product

17  without bothering to read the packaging or labeling under the assumption that it is

18  still brewed in Jamaica.  Plaintiffs have not established that Defendant is under a

19

20

15cv1681 BTM(BLM)

1  duty to completely change the packaging or include words such as "DOMESTIC"

2  or "local ingredients" to alert such consumers of a change. [6]

3      It is unclear to what degree, if at all, the Complaint rests on the labeling of

4  the bottles.  The Complaint alleges, "Reasonable consumers, including Plaintiffs,

5  cannot or do not read the concealed fine print on the bottles and cans until after

6  they have already purchased Red Stripe.  Even then, the print on the label is

7  ambiguous and difficult to read." (Compl. ¶ 15.)  The bottles can be removed from

8  the six packs before purchase, but it is unclear whether Plaintiffs did so.

9      At any rate, the language on the bottle labels would not lead a reasonable

10  consumer to believe that Red Stripe is made in Jamaica with Jamaican ingredients.

11  Like the packaging of the twelve packs and six packs, the bottle label includes the

12  language "Jamaican Style Lager" under the "Red Stripe" label in addition to the

13  D&G logo.  (Ex. A to Compl.)  On the back of the label are the words:  "For over

14  80 years . . . Red Stripe has embodied the spirit, rhythm and pulse of Jamaica and

15  its people."   This language is a vague, colorful expression of Red Stripe's

16  association with Jamaica and cannot reasonably be construed as a designation of

17  origin. Furthermore, on the edge of the label are the words "Brewed & Bottled by

18

19      [6] The Complaint points to bar menus that list Red Stripe as imported beer.  (Ex. B to

20  Compl.)  The Court does not find this evidence to be persuasive.  These bars may have listed Red Stripe as imported prior to 2012 and may never have taken note that Red Stripe should be moved to the domestic category.

12

1    Red Stripe Beer Company Latrobe, PA."   Although the words are small, the

2    contrasting white print is legible.   It is likely that anyone examining the label

3    carefully enough to read the language on the back of the label would see that the

4    beer is brewed and bottled in Pennsylvania.   <u>See</u> <u>Pernod Ricard USA, LLC v.</u>

5    <u>Bacardi U.S.A., Inc.</u>, 653 F.3d 241, 253 (3d Cir. 2011) (explaining that even if the

6    words "Havana Club" on bottle of rum could be understood as indicating the

7    product's geographic origin in Havana, Cuba, "those same words cannot mislead

8    a reasonable consumer  who is told in no uncertain terms that 'Havana Club' is a

9    brand of rum made in Puerto Rico."); <u>Piazza's Seafood World, LLC v. Odom</u>, 448

10   F.3d 744, 753 (5th Cir. 2006) (holding that Piazza's use of "Cajun Boy" and "Cajun

11   Delight" trade names on seafood products imported from overseas was not

12   actually misleading because Piazza labels its products with their country of origin).

13        Because the Court finds that no reasonable consumer could be misled by

14   the packaging or bottle labels into thinking that Red Stripe is brewed in Jamaica

15   with Jamaican ingredients, the Court grants Defendant's motion to dismiss as to

16   Plaintiffs' UCL, CLRA, and FAL claims.  The Court also grants Defendant's motion

17   to   dismiss   as   to   Plaintiffs'   negligent   misrepresentation   and   intentional

18   misrepresentation claims because the facts do not establish any misrepresentation

19   by Defendant.

20

13

15cv1681 BTM(BLM)

1

### IV.  CONCLUSION

2        For the reasons discussed above, Defendant's motion to dismiss is

3   **GRANTED**, and Plaintiffs' Complaint is **DISMISSED**.  Plaintiffs cannot state a

4   claim for deception or misrepresentation based on the Red Stripe bottle labels or

5   packaging for the 12-packs or 6-packs.  However, the Court will grant Plaintiffs

6   leave to amend the Complaint to assert claims based on other facts.  If Plaintiffs

7   choose to amend their Complaint, they must file their amended complaint within

8   15 days of the filing of this Order.

9   **IT IS SO ORDERED.**

10   Dated:  April 6, 2016

11                                         Barry Ted Moskowitz, Chief Judge

12                                         United States District Court

13

14

15

16

17

18

19

20

14

15cv1681 BTM(BLM)